UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL NIEL                                                      CIVIL ACTION

VERSUS

PURINA MILLS, LLC ET AL.                       NO.: 17-972-BAJ-RLB

## RULING AND ORDER

Before the Court in this premises-liability case is Defendant Purina Animal Nutrition, LLC's **Motion for Summary Judgment (Doc. 16)** against Plaintiff Michael Niel. For the reasons that follow, the **Motion (Doc. 16)** is **DENIED**.

## I. BACKGROUND

This dispute arises from Michael Niel's fall from a portable ladder on Purina's property. The relevant facts are few and undisputed.

Niel worked as a truck driver. (Docs. 16-1 at ¶ 1; 19-1 at ¶ 1). He drove trailers containing "dry bulk commodities" like wheat. (Docs. 16-1 at ¶ 3; 19-1 at ¶ 2). The trailers had two compartments called hoppers; Niel typically loaded them at the shipper's facility and then unloaded them at the recipient's facility. (Docs. 16-1 at ¶¶ 4 & 7; 19-1 at ¶ 1).

Niel fell on September 12, 2016. (Docs. 16-1 at ¶ 2; 19-1 at ¶ 22). That day, he was unloading wheat middlings at a Purina facility. (Docs. 16-1 at ¶ 6; 19-1 at ¶ 2). When Niel arrived at the facility, Purina employees told him to bring his trailer to the "receiving area." (Docs. 16-1 at ¶ 14; 19-1 at ¶ 4). So Niel positioned one of the

1

hoppers above a hole in the floor that "catches" the middlings. (Docs. 16-1 at ¶ 15; 19-1 at ¶ 5). Niel then opened the door on the underside of the first hopper, expecting the middlings to "roll out" into the hole. (Doc. 16-4 at p. 27).

But this batch did not unload easily. (Docs. 16-1 at ¶ 18; 19-1 at ¶ 10). After several hours' work, Niel had unloaded less than one percent of the middlings in the first hopper. (*Id.*). Purina's receiver-operator, Fred Allen, noticed that Niel was struggling; Allen offered Niel a portable ladder and air wand to help dislodge the middlings. (Docs. 16-1 at ¶ 19; 19-1 at ¶ 11). Niel used the portable ladder and air wand on the first hopper without issue, unloading its contents in three to four hours. (Docs. 16-1 at ¶ 25; 19-1 at ¶¶ 16–18).

After Niel unloaded the first hopper, he turned to the second. (*Id.*). He climbed to the ladder's work platform (the top step) and began using the air wand to unload the midddlings. (Doc. 19-1 at ¶ 19). Some of the middlings "flew up" into Niel's face, causing him to take a step back. (*Id.* at ¶ 20). The ladder then "wiggled," and Niel fell off of it. (*Id.* at ¶¶ 21–22). No one witnessed the fall. (Doc. 16-1 at ¶ 24).

Niel sued Purina for general negligence under Civil Code Article 2315 and custodial negligence under Civil Code Article 2317.1. (Doc. 1-2 at pp. 4–7). He alleges that Purina's portable ladder and facility, generally, presented unreasonably dangerous conditions causing his fall.[1] (*Id.*).

---

[1] Neither party had the chance to analyze the ladder: Purina allowed its employees to destroy it. (Docs. 16-1 at ¶ 88; 19-1 at ¶ 35). Purina did so even though it knew that it had an obligation to preserve the ladder as evidence. (*Id.*). Purina's destruction of the ladder is the subject of a pending Motion for Sanctions (Doc. 25), which the Court will resolve by separate order.

Now, Purina moves for summary judgment on the ground that Niel cannot show causation or that its floor or ladder presented an unreasonably dangerous condition. (Doc. 16). Niel opposes. (Doc. 19). He faults Purina for destroying the ladder—and thus depriving him of important evidence—and asserts that the unlevel floor in the Purina facility created an unreasonably dangerous condition that caused his fall. (*Id.*).

## II. LEGAL STANDARD

The Court will grant summary judgment if Purina shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). In deciding if Purina has made that showing, the Court views facts and draws reasonable inferences in Niel's favor. *See Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

## III. CHOICE OF LAW

The Court's jurisdiction is based on diversity of citizenship, so the Court applies Louisiana substantive law. *See Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Because Louisiana's choice-of-law rules are substantive, the Court applies them here. *See Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)).

The first step under Louisiana's choice-of-law rules is to determine whether the laws of two or more states conflict. *Lonzo v. Lonzo*, 2017-0549, p. 12 (La. Ct. App.

3

4th Cir. 11/15/17); 231 So. 3d 957, 966. If the laws do not conflict, the Court applies forum law. *See Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 285 n.2 (5th Cir. 2009).

The parties have not identified a conflict, and the Court has not found one. (Docs. 16-1, 19). The Court therefore applies Louisiana premises-liability law.

IV. **DISCUSSION**

A. **Custodial Negligence**

Civil Code Article 2317.1 governs Purina's liability for damages caused by a defect in its premises. *See Bufkin v. Felipe's Louisiana, LLC*, 2014-0288 (La. 10/15/14); 171 So. 3d 851. To recover under Article 2317.1, Niel must show that (1) Purina owned or had custody of the facility, (2) the facility contained a defect that presented an unreasonable risk of harm, (3) the defective condition caused damage, and (4) Purina knew or should have known of the defect. *See Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 616 (5th Cir. 2018). Because the first and fourth elements are not at issue, the Court turns to the second and third.

1. **Unreasonable Risk of Harm**

The Court applies a "risk-utility balancing analysis" to decide if a defect in Purina's premises presented an unreasonable risk of harm.[2] *See Renwick*, 901 F.3d

---

[2] These factors include "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility, or whether it is dangerous by nature." *Dauzat v. Curnest Guillot Logging Inc.*, 2008-0528, p. 4 (La. 12/2/08); 995 So. 2d 1184, 1186–87 (per curiam).

4

at 617. That decision raises an "issue of mixed fact and law or policy that is peculiarly a question for the jury." *Broussard v. State ex rel. Office of State Bldgs.*, 2012-1238, p. 9 (La. 4/5/13); 113 So. 3d 175, 183 (citation omitted). Summary judgment is nonetheless appropriate if Niel fails to offer factual support for his claim that the condition of the floor of the Purina facility presented an unreasonably dangerous condition. *See Renwick*, 901 F.3d at 617. Niel offers the requisite support. (Doc. 19).

First, Niel points to the deposition testimony of Purina receiver-operator Fred Allen. (Doc. 19-4). Allen attests that the concrete was "not level" in the location that Niel placed his portable ladder. (*Id.* at p. 12). And Allen attests that Purina employees knew that truck drivers would use the portable ladder on the unlevel surface. (*Id.* at pp. 15–16).

Second, Niel points to the deposition testimony of Jennifer Hines, Purina's quality and safety supervisor.[3] (Doc. 19-7). Niel attests that Purina knew that the portable ladder should not be used on unlevel surfaces and that the floor sloped "slight[ly]" in the location that Niel placed the portable ladder. (*Id.* at pp. 14–15).

A reasonable jury presented with this evidence could find that the Purina facility's unlevel floor presented an unreasonable risk of harm. *See Renwick*, 901 F.3d at 617. The Court therefore finds that Purina has not met its burden of showing the absence of a genuine dispute of material fact on the issue. *See* FED. R. CIV. P. 56(a).

---

[3] Hines also served as Purina's Rule 30(b)(6) designee. (Doc. 19-7).

## 2. Causation

Purina argues that Niel cannot prove that an unreasonably dangerous condition in its facility caused his fall. (Doc. 16-2 at p. 5). In so doing, Purina discounts Niel's testimony and the opinions of his safety expert, Michael Gautreaux. (Doc. 19-8).

Gautreaux opines that Niel's use of the Purina-supplied portable ladder on the unlevel concrete floor created a "dangerous stability condition" causing Niel's fall. (Doc. 19-18 at pp. 12–13). This opinion testimony, together with Niel's testimony about the "wiggle" in the ladder that caused his fall, creates a genuine dispute of material fact on the issue of causation. (Doc. 19-2 at p. 25). The Court therefore finds that Purina has not met its burden of showing the absence of a genuine dispute of material fact on the issue. *See* FED. R. CIV. P. 56(a).

## B. General Negligence

Purina also moves for summary judgment on Niel's Article 2315 general-negligence claim. (Doc. 16, 16-2). But "[t]here is essentially no difference" between Niel's Article 2315 claim and his Article 2317.1 claim. *Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 729 (5th Cir. 2017). Both claims require proof of Purina's negligence. *See id.* at 729. Because Purina fails to meet its summary judgment burden on Niel's Article 2317.1 claim, Purina necessarily fails to meet its burden on Neil's Article 2315 claim.

6

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Purina Animal Nutrition, LLC's **Motion for Summary Judgment (Doc. 16)** is DENIED.

Baton Rouge, Louisiana, this 11th day of June, 2019.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**